FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAR 27 PM 2: 57
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DEVICCO TROY MOSS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 111-205 |
| | ) | (Formerly CR 110-251) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Devicco Troy Moss, an inmate currently incarcerated at USP – Atlanta in Atlanta, Georgia, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I.  **BACKGROUND**

On September 15, 2010, a federal grand jury returned a 56-count indictment against Petitioner and 22 co-defendants for various narcotics violations. Petitioner was named in three of those counts: Count One charged him with conspiracy to distribute 5 kilograms or more of cocaine hydrochloride, 280 grams or more of cocaine base, an amount of Oxycodone, and an amount of 3,4- methylenedioxymethamphetamine (MDMA, a/k/a Ecstasy), in violation of 21 U.S.C. §§ 841(a)(1) and 846; Counts Twenty and Twenty-One charged him with use of a communication facility in causing or facilitating the commission of a felony, in violation of 21 U.S.C. § 843(b); the indictment also included a forfeiture allegation against money and real and personal property obtained from the crimes alleged in the indictment. United States v.

Woods, CR 110-251, doc. no. 4 (S.D. Ga. Sep. 15, 2010) (hereinafter "CR 110-251"). A penalty certification was filed simultaneously with the indictment. See id., doc. no. 5. The Court appointed Edward J. Coleman, III, to represent Petitioner. Id., doc. no. 272.

Pursuant to a written plea agreement, Petitioner pleaded guilty to the lesser-included offense of Count One to conspiracy to distribute a quantity of controlled substances.[1] Id., doc. nos. 623, 624. Petitioner's plea agreement contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id., doc. no. 624, p. 5. In return, the government agreed to dismiss the remaining counts against Petitioner, not to object to a 2-point reduction in Petitioner's offense level for acceptance of responsibility, and to move for an additional 1-point reduction for acceptance of responsibility. Id. at 1-2. In addition, the government agreed to consider whether to file a motion for downward departure from the applicable Sentencing Guidelines range if Petitioner's cooperation qualified as "substantial assistance" pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1. Id. at 2-3.

---

[1]Specifically, Petitioner pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine hydrochloride, cocaine base, an amount of Oxycodone, and an amount of 3,4- methylenedioxymethamphetamine (MDMA, a/k/a Ecstacy), in violation of 21 U.S.C. §§ 841(a)(1) and 846. The plea agreement further stipulated that the quantity of controlled substances attributable to Petitioner is "at least 280 grams of cocaine base but less than 500 grams of cocaine base." CR 110-251, doc. no. 624, p. 6.

At the Rule 11 hearing held on May 10, 2011, the Honorable J. Randal Hall, United States District Judge, summarized the terms of the plea agreement and explained to Petitioner that he "agreed to voluntarily and expressly waive [his] right to directly appeal [his] conviction and sentence and to collaterally attack [his] conviction and sentence in a post-conviction proceeding on any ground," except for the two limited situations provided for in the plea agreement. Id., doc. no. 818, pp. 32-34. Judge Hall asked Petitioner if he understood and agreed to these provisions of the plea agreement. Id. at 32, 34. Petitioner responded that he did. Id. Judge Hall also informed Petitioner in detail that he would be waiving a number of other rights by pleading guilty. Id. at 11-14. When Judge Hall asked whether Petitioner was satisfied with the representation of his counsel, Petitioner responded that he was. Id. at 11.

Judge Hall also explained at the Rule 11 hearing that the maximum penalty for Petitioner's crime was a term of not more than twenty years of incarceration, a fine of not more than $1,00,000, or both, followed by a term of supervised release for at least three years. Id. at 34. When Judge Hall asked whether Petitioner understood the potential penalties, Petitioner responded, "Yes, sir." Id. Moreover, Judge Hall explained the role of the Sentencing Guidelines, emphasizing that they were only advisory and not binding on him. Id. at 37. In addition, a government witness provided testimony as to the factual basis for the plea, the truth of which Petitioner confirmed. See id. at 20-27, 31. Furthermore, in response to a question asked by Judge Hall, Petitioner averred that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. at 37-38. Similarly, Petitioner stated that no one had forced, required, or pressured him to plead guilty, nor had anyone promised him anything in order to induce him to plead guilty. Id. at 34, 38. At the conclusion of the Rule 11 colloquy, Judge Hall accepted Petitioner's guilty plea. Id. at 38.

After the Rule 11 hearing, the United States Probation Office prepared a presentence

investigation report ("PSI"). Because of the quantity of cocaine base to which the parties had stipulated in the plea agreement, the PSI provided that a base offense level of 32 was warranted pursuant to U.S.S.G. § 2D1.1(c)(4), which provides that drug offenses involving at least 280 grams but less than 840 grams of cocaine base have a base offense level of 32. PSI ¶ 20. The PSI also provided for a three-level reduction in Petitioner's base offense level for acceptance of responsibility, resulting in a total offense level of 29. PSI ¶¶ 20-29. In calculating Petitioner's criminal history category, the PSI provided that Petitioner's two prior criminal convictions garnered three criminal history points each, resulting in a subtotal criminal history score of six. PSI ¶ 33. In addition, pursuant to U.S.S.G. § 4A1.1(d), two criminal history points were added to the subtotal because Petitioner was on probation at the time he committed the underlying offense, resulting in a total criminal history score of eight points. PSI ¶ 34. The PSI further provided that eight criminal history points established a criminal history category of IV. Id. ¶ 35. Based on these factors, the PSI set forth a Sentencing Guidelines range of 121-151 months of imprisonment. PSI ¶¶ 54-55.

Petitioner filed two objections to an initial version of the PSI, which were resolved in the final version of that report. PSI, addendum; CR 110-251, doc. no. 816, p. 4. Petitioner did not object to the final version of the PSI. PSI, addendum; CR 110-251, doc. no. 816, p. 4. During the October 12, 2011 sentencing hearing, Judge Hall adopted the PSI's conclusions and granted the government's motion pursuant to U.S.S.G. § 3E1.1(B) for a three-point reduction for Petitioner's acceptance of responsibility. CR 110-251, doc. no. 816, p. 5. Further, in accordance with the government's motion for a downward departure pursuant to U.S.S.G. § 5K1.1, Judge Hall departed below the applicable guideline range of 121-151 months and sentenced Petitioner to a term of 97 months of imprisonment. Id. at 17. Consistent with his plea agreement, Petitioner did not appeal.

On December 16, 2011, Petitioner filed the instant § 2255 motion, in which he raises

the following grounds for relief: (1) his indictment is fatally flawed because it did not explicitly reference the penalty provision of the statute under which he was charged; (2) his guilty plea was not knowing or voluntary; (3) the District Court erroneously imposed a two-point increase in his criminal history calculation under U.S.S.G. § 4A1.1(e) for recency; and (4) his trial counsel provided ineffective assistance in that he (a) failed to discover the improper two-point increase in Petitioner's criminal history calculation in the PSI, (b) failed to consult with Petitioner about filing a direct appeal, (c) failed to appeal the improper two-point increase despite Petitioner's repeated requests that he do so, and (d) caused Petitioner to enter into a "flawed" plea agreement because of his deficient handling of the improper two-point increase in Petitioner's criminal history calculation. (Doc. no. 1, pp. 4, 7-24.) Respondent contends that Petitioner's § 2255 motion should be dismissed because his guilty plea was knowing and voluntary and thus his § 2255 claims are barred by the collateral attack waiver set forth in his plea agreement. (See doc. no. 3.) The Court resolves the matter as follows.

## II. DISCUSSION

### A. No Need For Evidentiary Hearing

The Court recognizes that in the Eleventh Circuit, the general rule is "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

5

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case.

### B. Petitioner's Guilty Plea Was Knowing and Voluntary

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "Clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The

6

Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (quotation omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Hall addresses each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall informed Petitioner in clear terms of the charge to which Petitioner was pleading guilty, as well as the maximum penalty that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charge and the maximum penalty that might be imposed. CR 110-251, doc. no. 818, pp. 32-34. Judge Hall also provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 11-14, 33-34. In addition, Petitioner testified that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence, and that no one had forced, pressured, or induced him to plead guilty. Id. at 34, 37-38.

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and Petitioner fails to show otherwise with his assertion that he was not made aware of a two-point increase in his criminal history points for recency of his offense under U.S.S.G. § 4A1.1(e).

7

(See doc. no. 1, p. 21.) As Respondent persuasively argues, Petitioner's alleged misunderstanding does not undermine the "core principles" ensuring the knowing and voluntary nature of his guilty plea. (Doc. no. 3, pp. 7-8.) Indeed, as Respondent points out (id. at 8), Petitioner received no such increase in his criminal history points. Thus, Petitioner's conclusory allegation that he would not have pleaded guilty had he known about a non-existent increase in his criminal history points (doc. no. 1, p. 23) is clearly insufficient to carry his burden that he would not have entered the guilty plea. See Moriarty, 429 F.3d at 1020. Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily, and he is therefore not entitled to relief on Ground Two of his motion.

### C. Effect Of Collateral Attack Waiver In The Plea Agreement

Having established that Petitioner is not entitled to relief on Ground Two of his motion, the Court proceeds to address whether Petitioner is entitled to relief on any of the remaining grounds in his § 2255 motion. For the reasons set forth below, the Court finds that Grounds One and Three of Petitioner's motion are blocked by the collateral attack waiver in his plea agreement, as are three of the four claims raised in Ground Four of his motion asserting that he received ineffective assistance of counsel. Further, while Petitioner's fourth claim that his counsel rendered ineffective assistance by causing him to enter into a "flawed" plea agreement is not blocked by the collateral attack waiver, the Court finds this claim to be without merit.

#### 1. Knowing And Voluntary Nature Of Waiver

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993).[2]

---

[2] Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

8

"To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then Petitioner's claim regarding his counsel's alleged failure to consult about filing a direct appeal is barred from review. See United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999) (enforcing waiver provision where defendant was specifically questioned about waiver); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 110-251, doc. no. 624, p. 5. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the collateral attack waiver provision. Id., doc. no. 818, pp. 32-34. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Id.

The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that the collateral attack waiver is valid. Accordingly, Petitioner's claims in Ground One – that his indictment is fatally flawed because it did not explicitly reference the penalty provision of the statute under which he was charged – and Ground Three – that the District Court erroneously

imposed a two-point increase in his criminal history calculation under U.S.S.G. § 4A1.1(e) for recency – are barred by the waiver. Furthermore, as explained below, all but one of Petitioner's claims of ineffective assistance of counsel raised in Ground Four of his motion are similarly barred by the waiver.

"An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id.

The same reasoning applies to Petitioner's claim in Ground Four of his motion that his trial counsel failed to discover the improper two-point increase in Petitioner's criminal history calculation in the PSI. First, for the reasons set forth *supra* Part II.B, Petitioner's claim regarding the allegedly erroneous criminal history calculation does not alter the Court's conclusion that his guilty plea was knowing and voluntary. Second, this claim does not call into question the validity of the waiver provision. This claim is therefore barred from review by the collateral attack waiver. See Williams, 307 F.3d at 508-09.

Although the Eleventh Circuit has not addressed the exact issue presented here, the rationale from Williams also applies with respect to Petitioner's claims in Ground Four that his counsel was ineffective for failing to consult about filing an appeal, and for failing to appeal the allegedly improper two-point increase despite Petitioner's repeated requests that he do so. Because these claims do not affect the validity of the guilty plea or relate to the waiver in the plea agreement, they are also barred by the collateral attack waiver. See id.; United States v.

Falcon-Sanchez, 416 F. App'x 728, 730 (10th Cir. 2011) (holding that ineffective assistance claim based on counsel's failure to file notice of appeal as instructed by petitioner was barred by collateral attack waiver because the claim "[did] not relate to the validity of the plea or the waiver"); see also United States v. Morgan, 284 F. App'x 79, 87 (4th Cir. 2008) (*per curiam*) (holding that ineffective assistance claim based on counsel's failure to file appeal was barred by collateral attack waiver); Skaggs v. United States, 104 F. App'x 462, 464 (6th Cir. 2004) (same). But see United States v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007) (holding that ineffective assistance claim based on counsel's failure to file appeal was not barred by appeal and collateral attack waiver).

Additionally, the determination that these claims are barred by the collateral attack waiver does not run afoul of the decision in United States v. Gomez-Diaz, 433 F.3d 788 (11th Cir. 2005). In that case, the Eleventh Circuit held that a § 2255 petitioner who had entered into a valid appeal waiver did not have to show a meritorious ground for appeal in order to prevail on a claim that his counsel was ineffective for failing to file a notice of appeal when instructed to do so. Id. at 793-94. In contrast to the issue addressed in Gomez-Diaz, the determinative question in the instant case is whether, assuming the truth of Petitioner's allegations that his counsel improperly failed to consult about an appeal or to appeal after being requested to do so, Petitioner is nevertheless barred from raising a claim of ineffective assistance of counsel by a valid waiver of his right to collaterally attack his sentence.

In other words, the Gomez-Diaz decision focused on the waiver of the petitioner's right to file a *direct appeal* – in particular, whether the existence of a *direct appeal* waiver precluded an ineffective assistance of counsel claim absent a showing of a meritorious ground for appeal. See id. The focus of the instant case is the *collateral attack* waiver. That waiver represents a forfeiture of the right to collaterally attack any error – even a "blatant error" such as counsel's failure to consult about a direct appeal – that does not fall within the previously

11

discussed exception from Williams, *supra*. See United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999) (reasoning that a waiver of the right to pursue an appeal or collateral attack "includes a waiver of the right to appeal [or collaterally attack] blatant error"). Therefore, following the rationale of Williams, the Court concludes that enforcement of the collateral attack waiver in the instant case does not contradict the Eleventh Circuit's holding in Gomez-Diaz.[3]

### 2. Ineffective Assistance of Counsel Claim in Ground One Not Barred By Waiver, but Lacks Merit

Notwithstanding the analysis above, Petitioner's sole remaining claim in Ground Four – that his counsel provided ineffective assistance by causing Petitioner to enter into a "flawed" plea agreement – is not precluded by his appeal waiver, as "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As this claim challenges his counsel's performance as it relates to the validity of Petitioner's plea or waiver (inasmuch as Petitioner alleges that his counsel deficient handling of an improper two-point increase in Petitioner's criminal history calculation caused him to enter into a "flawed" plea agreement),

---

[3] Of note, in reaching its decision in Gomez-Diaz, the Eleventh Circuit announced that its opinion was in accord with the Tenth Circuit's treatment of the same issue in United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005). The Tenth Circuit later clarified its decision in Garrett in addressing the issue presented in the instant case, and proceeded to hold that claims of ineffective assistance of counsel premised on counsel's failure to file a notice of appeal are barred by a valid collateral attack waiver. Falcon-Sanchez, 416 F. App'x at 730-31. Thus, the Tenth Circuit's case law concerning these issues further illustrates that the Court's determination in the instant case is in harmony with the Eleventh Circuit's decision in Gomez-Diaz.

Petitioner's claim is not barred by the provision in the plea agreement waiving his appeal rights.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Here, for the reasons explained above, Petitioner's claim that his counsel failed to discover or object to an improper two-point increase in his criminal history calculation fails to establish that his guilty plea was not entered into knowingly and voluntarily. See supra Part II.B. Moreover, Petitioner has not shown that his counsel's performance was objectively unreasonable. Petitioner asserts that he received a two-point increase in his criminal history calculation because of the recency of his underlying offense to a prior offense; he argues this is improper because by the time he was sentenced, the Sentencing Guidelines had been amended to eliminate the provision for increases to a defendant's criminal history points based on recency of a prior offense. (Doc. no. 1, p. 21.) Petitioner is correct that, effective November 1, 2010, U.S.S.G. § 4A1.1(e) was amended to eliminate the provision for increases

14

to a defendant's criminal history points where an offense was committed less than two years after release from a previous sentence of imprisonment. *Compare* U.S.S.G. § 4A1.1(e) (2009 ed.) *with* U.S.S.G. § 4A1.1(e) (2010 ed.). Unfortunately for Petitioner, this change has no impact on his sentence because the record makes clear that he received no such increase in his criminal history calculation. See PSI. Simply put, Petitioner's counsel did not provide objectively unreasonable representation regarding a non-existent two-point increase in Petitioner's criminal history calculation.[4] Accordingly, Petitioner is not entitled to relief on this claim.

In sum, Petitioner is not entitled to relief on any of the claims asserted in his § 2255 motion. Respondent's motion to dismiss the § 2255 motion in its entirety should therefore be granted.

## III. CONCLUSION

For the reasons set forth above, the Court finds that Petitioner is not entitled to relief under § 2255. The Court therefore **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 27th day of March, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4] Indeed, Petitioner's argument is somewhat illogical, as his criminal history points would not have been calculated until the PSI was prepared, which would necessarily have been *after* the entry of his guilty plea. Nevertheless, to the extent that Petitioner asserts that his counsel was deficient for failing to anticipate a two-point increase for recency, this argument must fail for the simple reason that there was no such increase in Petitioner's criminal history calculation.

15